UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| OCTAVIOUS BUNTYN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 20-1108-JDT-cgc |
| ) | |
| CJC, MADISON COUNTY JAIL, ) | |
| ) | |
| Defendant. ) | |

ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

On May 15, 2020, Plaintiff Octavious Buntyn, who is incarcerated at the Madison County Criminal Justice Complex (CJC) in Jackson, Tennessee, filed a *pro se* civil complaint. (ECF No. 1.) After Buntyn filed the necessary documents, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) Because Buntyn names the CJC as the only Defendant, the Court will treat his allegations as claims against Madison County.

Buntyn alleges various problems with the conditions at the CJC, including: being given clothing and towels that were used; unsanitary food and utensils; failure to take proper precautions to guard against the COVID-19 pandemic; overpopulation that resulted in him having to sleep on the floor; having his outgoing mail read by someone on the prison staff; black mold on the walls and ceilings, the flaps through which food trays are delivered,

and in the air vents; and failure to provide inmates with supplies to clean their cells and living areas. (ECF No. 1 at PageID 2-3.) Buntyn also alleges the CJC refuses to send him to a Tennessee Department of Correction (TDOC) facility even though he has no pending charges and has requested several times to be moved. (*Id.* at PageID 3-4.) He further contends the staff at the CJC are unprofessional, using vulgar language to address him, failing to reply to inmate request forms,[1] and keeping his family on hold for more than thirty minutes when they telephone to speak to Buntyn without giving a reason for the delay. (*Id.* at PageID 4.)

Buntyn does not specify the relief he seeks, stating merely "[p]ain and suffering for cruel and unusual punishment/treatment." (*Id.* at PageID 1.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57

---

[1] Buntyn states that it took five days for him to see a nurse after he filled out a sick call form. (*Id.* at PageID 4.)

(2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

The Court presumes Buntyn files his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

3

> person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Buntyn has sued only the CJC and does not contend that any specific person violated his rights. However, Madison County may be held liable under § 1983 *only* if Buntyn's injuries were sustained pursuant to an unconstitutional custom or policy. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate municipal or county liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

Buntyn does not allege that a Madison County policy is responsible for the conditions of the CJC. He merely alleges that the unpleasant conditions exist. Buntyn therefore fails to state a claim against Madison County.

Even if Buntyn had named the individual responsible party or parties, Buntyn's claims concerning COVID-19, black mold, and the lack of cleaning supplies are stated only generally without any assertion that Buntyn himself has been affected. Buntyn, however, does not have standing to assert claims on behalf of any inmate other than himself. *See Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989). Additionally, there is no allegation that Buntyn suffered any actual harm from being given used clothing and towels, ingesting unsanitary food and drink, or having to sleep on the floor.

With regard to Buntyn's claim that his outgoing mail was read by "someone" at the CJC, he actually alleges that he could not *seal* his outgoing mail and for that reason assumes the mail also was read. That conclusory allegation is insufficient to state a First Amendment claim. Moreover, even if his outgoing mail was read, Buntyn does not allege that it was privileged legal mail. *See Meadows v. Hopkins*, 713 F.2d 206, 208-11 (6th Cir. 1983) (upholding a prison policy permitting prison staff to read all inmate incoming and outgoing non-legal mail); *Longmire v. Mich. Dep't of Corr.*, 2019 WL 3282678, at *5 (W.D. Mich. July 22, 2019) (noting, "Many courts have held that prison officials do not violate the First Amendment by inspecting an inmate's non-legal mail," and collecting cases).

The allegation that Buntyn's requests for transfer to a TDOC facility have not been granted also fails to state a claim. Prisoners do not have a constitutional right to be assigned

5

to a particular prison, security classification, or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976).

Buntyn's allegation that the CJC staff does not respond to inmate requests also is insufficient to state a claim. There is no inherent constitutional right to an effective grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Furthermore, though he contends it took five days to see a nurse after he filled out a sick call form, Buntyn does not allege that he was denied adequate medical care for a serious medical need or that the five-day delay actually harmed him by exacerbating a serious medical need.

The allegation that the CJC staff used vulgar language when speaking to Buntyn also fails to state a claim. In general, verbal comments, even if harassing and abusive, do not violate the Eighth Amendment no matter how "shameful and utterly unprofessional." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545-46 (6th Cir. 2004) (affirming dismissal for failure to state a claim where plaintiff's allegations included continuous insulting remarks by guard); *see also Morrison v. Greenwald*, No. 3:09-CV-009, 2010 WL 1253962, at *9 (S.D. Ohio Feb. 24, 2010), report and recommendation adopted, 2010 WL 1253958 (S.D. Ohio Mar. 23, 2010) ("The Constitution does not protect inmates (or anyone else) from gross insults by public officials, including prison guards."). Just as the Constitution "does not mandate comfortable prisons," *Wilson*, 501 U.S. at 298, it does not mandate polite prison guards or officials. "Derogatory or abusive language and conduct do not give

6

rise to a claim under § 1983." *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn. 1994) (citing *Paul v. Davis*, 424 U.S. 693 (1976)).[2]

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that Buntyn should be given the opportunity to amend his complaint.

In conclusion, the Court DISMISSES Buntyn's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend, however, is GRANTED. Any amendment must be filed within twenty-one (21) days after the date of this order.

Buntyn is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The text of the complaint must allege sufficient facts to support each claim without reference to any

---

[2] The contention that CJC staff kept Buntyn's family members on hold for more than thirty minutes when they telephoned the facility is too trivial to state any constitutional claim.

7

extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Buntyn fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

                                                s/ **James D. Todd**
                                                JAMES D. TODD
                                                UNITED STATES DISTRICT JUDGE